UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15CV-00101-HBB

MELVIN SCOTT ROSS                                                                 PLAINTIFF

VS.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security                                            DEFENDANT

MEMORANDUM OPINION
AND ORDER

BACKGROUND

The Commissioner of Social Security denied Melvin Scott Ross's application for disability

insurance benefits.  Ross seeks judicial review of the Commissioner's final decision pursuant to

42 U.S.C. § 405(g).  Ross has filed a motion for judgment on the pleadings under Fed. R. Civ. P.

12(c) (DN 16).  The Commissioner has filed a responsive Fact and Law Summary (DN 19).

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned

United States Magistrate Judge conducting all further proceedings in this case, including issuance

of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of

Appeals in the event an appeal is filed (DN 13).

FINDINGS OF FACT

Melvin Scott Ross actively served in the United States Navy until he was involved in a

motor vehicle accident in 1993 causing traumatic brain injury (Tr. 43, 49).  Ross claims that his

1

conditions have worsened progressively since the accident (Tr. 49-50, 67).   After his accident, Ross sustained almost ten years of gainful employment, including working as a corrections officer from 1994 – 1996 and as a computer operator at Medi-Fax from 1996-1999 (Tr. 55-59).   Ross also worked as a computer operator at Deesa for five months in 2000 and as a produce stocker at Houchens in 2003 (Tr. 60-62).   Most recently, in 2013, Ross worked as a case manager for Operation Stand Down in Nashville, which he testified was an "unsuccessful work attempt" (Tr. 51-52).   Ross explains that the reason he can't work is because he can't stay focused and people scare him (Tr. 69-70).   To be closer to his son, Ross recently moved to Auburn, Kentucky, where he lives alone in an apartment (Tr. 45-47).   He currently receives disability benefits from the Veteran's Administration (Tr. 49).

Ross applied for disability insurance benefits ("DIB") under Title II on May 14, 2014 (Tr. 188).   He claims he became disabled on January 1, 2006, as a result of traumatic brain injury, broken neck, PTSD, and mood disorder (Tr. 209, 213).   His application was denied initially and on reconsideration (Tr. 98, 104).   Administrative Law Judge Frank L. Gregori ("ALJ") conducted a hearing in Nashville, Tennessee, on December 16, 2014 (Tr. 36).   Ross attended the hearing with his attorney, Rachael Pas (Id.).   Rebecca Williams, an impartial vocational expert, also appeared at the hearing (Id.).   The ALJ issued an unfavorable decision on April 3, 2015 (Tr. 32).

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R § 404.1520; Kyle v. Comm'r of Soc. Sec., 609 F.3d 847, 855 (6th Cir. 2010), and found as follows.   First, Ross did not engage in substantial gainful activity during the period at issue: January 1, 2006 (his alleged onset date) to September 30, 2009 (his date last insured) (Tr. 27).   Second, through the date last insured, Ross had the medically determinable impairments of: "status-post residuals of a 1993 motor vehicle accident, status-post cervical spine

2

surgery, substance addiction disorders, an anxiety disorder, and a mood disorder" (Id.).   However, Ross did not have an impairment or combination of impairments that significantly limited his ability to perform basic work related activities for 12 consecutive months, and, therefore, he did not have a severe impairment or combination of impairments (Tr. 27).   Accordingly, Ross was not under a disability during the relevant time period (Tr. 32).

Ross appealed the ALJ's decision (Tr. 13).   The Appeals Council declined review (Tr. 1).   At that point, the denial became the final decision of the Commissioner, and Rearden appealed to this Court (DN 1).

CONCLUSIONS OF LAW

**A.  Standard of Review**

When reviewing the Administrative Law Judge's final decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility."   Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).   Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion.   *See* Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

**B. Finding No. 4**

1. VA Disability Determination

Ross's initial claim is that the ALJ committed reversible error by failing to address the Veteran's Administration disability rating "in any meaningful way" (DN 16, at p. 5).   In Finding No. 4, the ALJ discussed the VA's award of 100% service-connected disability benefits to Ross on two occasions.   At the outset, the ALJ recognized the VA's award and explained that "the VA adjudication is an entirely different adjudication," which relies on "service connected disability," whereas, an SSA adjudication determines "the maximum a person can do with his limitations and not the least" (Tr. 29).   Later, the ALJ noted that he is mindful that Ross has been found disabled by the VA and is currently receiving payments from the agency but clarified that the SSA must make its disability determination based on social security law, rather than determinations by other agencies (Tr. 30).

Ross relies heavily on <u>King v. Commissioner of Social Security</u>, 779 F. Supp. 2d 721, 726 (E.D. Mich. 2011).   In <u>King</u>, the Administrative Law Judge gave no consideration at all to the VA's determination, "except to cite the regulation that states another agency's disability determination does not bind the Commissioner."   779 F. Supp. 2d at 725.   The court found this citation was insufficient because it was left to speculate on the Administrative Law Judge's rationale for disregarding the VA's decision.   <u>Id.</u> at 726.   Ross believes that <u>King</u> requires Administrative Law Judges to give adequate discussion and assign weight to a VA disability determination (DN 16, at p. 7-8).

More recent decisions from within the Sixth Circuit, however, have undermined reading <u>King</u> as establishing a rule that Administrative Law Judges are required to assign weight to the VA's decision.   <u>Stokes v. Comm'r of Soc. Sec.</u>, No. 1:13cv-487, 2015 WL 803087, at *8 (W.D.

4

Mich. Feb. 25, 2015).   In <u>LaRiccia v. Commissioner of Social Security</u> the Sixth Circuit indicated it "has not set forth a specific standard regarding the weight the Commissioner should afford a 100% disability determination by the VA."   549 F. App'x 377, 387 (6th Cir. 2013) (citing <u>Stewart v. Heckler</u>, 730 F.2d 1065 (6th Cir. 1984) (noting in passing the claimant's VA 100% disability rating)).   The court also found in <u>Ritchie v. Commissioner of Social Security</u>, that a disability rating from the VA "is entitled to consideration" but is not entitled to any particular weight.   540 F. App'x 508, 510 (6th Cir. 2013).   The Administrative Law Judge in <u>Ritchie</u> stated that she was not bound by the VA's decision, but that she did consider it, and the Sixth Circuit found she "clearly stated a proper understanding of the law."   <u>Id.</u>

Here, the ALJ similarly demonstrated a proper understanding of the law by citing to the applicable regulations and social security rulings and indicating he was "mindful" of the VA's disability finding (Tr. 31).   Further, a service-connected disability determination by the VA "is considered at most to be 'one piece of evidence' that is not determinative of the outcome of an application for social security benefits.   <u>Miller v. Colvin</u>, No. 3:15-cv-294-DW, 2016 WL 154127, at *4 (W.D. Ky. Jan. 12, 2016) (quoting <u>Deloge v. Comm'r of Soc. Sec.</u>, 540 F. App'x 517, 518-19 (6th Cir. 2013)).   The ALJ here considered medical records, Ross's credibility, and the fact that he continued to work for ten years after recovering from the 1993 motor vehicle accident in making his final determination.     Finally, the ALJ pointed out that to be entitled to DIB, Ross had to be disabled as of September of 2009, when his insured status expired (Tr. 29). The VA did not make its disability determination until almost a year later, on August 25, 2010 (Tr. 166).   As such, the VA decision is not particularly relevant to the time period for DIB benefits.

So long as the reviewing court is not left to sheer speculation as to the ALJ's rationale for rejecting the VA's disability rating, the hearing decision will not be set aside on that basis.   <u>Miller</u>,

5

2016 WL 154127, at *4, *accord* <u>King</u>, 779 F. Supp. 2d at 726.    The undersigned does not have to speculate to understand the implicit reasons the ALJ rejected the VA's disability determination. The hearing decision, when read as a whole, adequately sets forth why the ALJ disregarded that determination.

2. Non-Examining State Agency Physicians

Ross next argues that the ALJ improperly afforded great weight to the opinions of State agency non-examining physicians that did not review the entire record (DN 16, at p. 13).   The Commissioner admits that Ross did not submit medical evidence of his treatment during the relevant period until after the State agency physicians reviewed the record but explains the ALJ discussed the evidence from that time period and described why it did not establish disability (DN 19, at p. 5).

Regardless of its source, Administrative Law Judges must evaluate every medical opinion in the record.   20 C.F.R. § 404.1527(c).   State agency physicians and psychologists are "highly qualified" experts in Social Security disability evaluation.    20 C.F.R. § 404.1527(e)(2)(i). Administrative Law Judges should evaluate non-examining state agency physician's and psychologist's opinions using the factors from 20 C.F.R. § 404.1527(a)-(d), such as "the consultant's medical specialty and expertise in [the] rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighting of the opinions."   <u>Id.</u>

Here, the ALJ gave great weight to the opinions of the state agency consultants because "they are consistent with the records and claimants [sic] endorsed functioning from the year 1993, the date of the vehicle accident, until his date last insured" (Tr. 30).   The ALJ also noted that the

6

state agency consultants documented and attempted to resolve contradictions and analyzed Ross's statements in view of his daily activities, history, and previous work experience (Id.).

Ross believes the ALJ erred in giving these opinions great weight because the state agency consultants did not perform a review of the entire case record (DN 16, at p. 9).   The state agency physicians rendered their opinions in June and August of 2014, however, Ross did not submit medical evidence pertaining to the relevant period until after these opinions.[1]

It is true that when a non-examining source has not reviewed a significant portion of the record, and the Administrative Law Judge fails to indicate that he has "at least considered [that] fact before giving greater weight" to the reviewing doctor's opinion, the decision cannot stand. Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009).   But when the opinions of non-examining State agency medical/psychological advisors are consistent with the record, those opinions represent substantial evidence to support the Administrative Law Judge's decision.   20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(f); Social Security Ruling 96-6p, 1996 WL 374180, at *2, 3; Atterbery v. Sec'y of Health & Human Servs., 871 F.2d 567, 570 (6th Cir. 1989).

Ross only submitted medical records from the VA Medical, VA Hospital, and the Emergency Department at the Bowling Green Medical Center (Tr. 290, 448, 1218).   However, records from the latter two sources focus on time periods post-dating Ross's date last insured and, therefore, are irrelevant to his DIB determination.   The records from VA Medical span from November 15, 2001, to April 15, 2014, which ranges long before and long after the relevant period of disability.   As noted by the ALJ, the records for the time period in question are limited.

Although limited, the ALJ discussed the VA Medical records spanning from January 1, 2006 to September 30, 2009, from the record (Tr. 29).   The ALJ notes that Ross's records show

---

1 The records submitted from the VA were printed on September 30, 2014.

complaints of pain and related symptoms but that the etiology of these allegations remains suspect (Id.).   In support, the ALJ discusses November 2007 and July 2009 records, which included Ross's allegations of pain (Tr. 29-30).   The ALJ mentioned that Ross had a CT scan done, revealing no sinus problems, and Ross consulted with a dentist, who ruled out dental issues (Tr. 30).   Of note, the ALJ calls attention to Ross's erratic behavior from an office visit in June of 2009 when he was questioned about improperly obtaining controlled prescriptions in violation of a narcotics contract (Id.).    The ALJ also explains that while Ross's complaints of pain in his neck and upper right extremities continued, his physical examinations were normal and unremarkable (Id.).   As to Ross's psychological conditions, the ALJ recounted Ross's report of "tremendous stress in life," involving legal problems, custody issues, and charges of child abuse (Id.).

After reviewing the record, the undersigned finds the ALJ thoroughly evaluated the evidence submitted after the state agency consultants rendered their opinions.    The State agency consultants found that Ross has a spinal disorder and an affective disorder but that these impairments were non-severe (Tr. 97, 104).   The VA Medical records from the relevant time period support these findings.   While Ross did consistently note pain, no objective testing revealed that his impairments were severe.   The undersigned finds the ALJ's assignment of great weight to the state agency physicians is supported by substantial evidence in the record.

### 3. Ross's Credibility

Lastly, Ross argues the ALJ improperly assessed his credibility by failing to discuss all seven regulatory factors required for a proper credibility determination (DN 16, at p. 13).   In opposition, the Commissioner explains that no such requirement exists; rather, an ALJ must only consider the types of factors listed in the regulations (DN 19, at p. 7).

The Commissioner is correct. Under 20 C.F.R. § 404.1529(c)(3) and SSR 96-7p, the Administrative Law Judge should "consider" seven-listed factors, however, there is no requirement that the ALJ discuss every factor. *See* White v. Comm'r of Soc. Sec., 572 F.3d 272, 287 (6th Cir. 2009) (SSR 96-7p sets for "a nonexhaustive list of multiple factors to consider in determining credibility). These factors are:

> 1. The individual's daily activities; 2. The location, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate the pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms . . .; and 7. Any other factor concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3. Credibility determinations regarding a claimant's subjective complaints rest with the Administrative Law Judge. Siterlet v. Sec'y of Health & Human Servs., 823 F.2d 918, 920 (6th Cir. 1987) (citation omitted). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. Villarreal v. Sec'y of Health & Human Servs., 818 F.2d 461, 463 (6th Cir. 1987).

Here, the ALJ listed the seven credibility factors from the regulations and acknowledged that he should consider these factors in addition to Ross's objective medical evidence (Tr. 28). After listing the factors, the ALJ stated that although he found Ross's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, he found Ross's statements concerning the intensity, persistence, and limiting effects of these symptoms "are not entirely credible *for the reasons explained in this decision*" (Tr. 29, emphasis added).

Ross takes issues with this statement by the ALJ, arguing that he only paid lip service to the regulation requirements (DN 16, at p. 14).

The undersigned disagrees.   The ALJ spent the rest of his opinion discussing the reasons why he found Ross's statements were not entirely credible.   First, the ALJ indicates that Ross's medical records for the time period at issue are very limited (Tr. 29).   The ALJ recognized Ross's consistent complaints of pain, but noted that the "etiology of these allegations remains suspect" because his physical examinations were normal and unremarkable (Tr. 29-30).   Ross feels the ALJ "mischaracterizes the evidence of record by citing to a lack of supporting medical records" (DN 16, at p. 14).    However, the undersigned has reviewed the records from the VA Medical and agrees with the ALJ's conclusions.   Of over 700 pages of records that Ross submitted from VA Medical, only about 70 pages relate to the DIB time period at issue.   And of those 70 pages, there are very few objective findings that support Ross's claim.   To that end, the undersigned finds the ALJ has accurately summarized the information pertinent to Ross's claim and properly considered it in assessing Ross's credibility.

The ALJ also considered that after the motor vehicle accident in 1993, Ross performed substantial gainful activity for more than ten years and discussed Ross's testimony, finding that his allegations are "lacking in persuasiveness in many respects" (Tr. 31).   The ALJ explained that he felt Ross's testimony was less than truthful because even after prompting from his lawyer, Ross continued to describe his current symptoms (Id.).   The ALJ also considered Ross's many years of alcohol dependence and substance abuse, indicating that Ross could not remember what his symptoms and functional abilities were during the period at issue (Id.).   Ross disagrees, arguing that the hearing transcript proves that he testified at great length regarding his symptoms during the relevant time period (DN 16, at p. 15).   The undersigned finds the ALJ's conclusion that Ross

could not remember his symptoms from the relevant time period is supported by the hearing transcript.   Ross additionally believes that the ALJ should have requested a supplemental hearing or investigated additional witnesses since he had "considerable trepidation" with Ross' testimony (Id. at p. 16). But the ALJ only stated that he "might" schedule a supplemental hearing to take additional testimony, and the decision not to hold another hearing was within his discretion (Tr. 77).[2]

Because the ALJ addressed numerous factors from the regulations in weighing Ross's credibility, the undersigned finds the decision is supported by substantial evidence.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:          Counsel

---

[2]  Further, Ross could have requested a supplemental hearing before the ALJ.